IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



YAROSLAV S. SKLYARSKY,      )
                            )
            Plaintiff,      )
                            )
       v.                   )   No. 09 C 2774
                            )
ABM JANITORIAL SERVICES,    )
MIDWEST,                    )
                            )
            Defendant.      )

# <u>OPINION AND ORDER</u>

Plaintiff Yaroslav Sklyarsky was an employee of defendant ABM

Janitorial Services, Midwest ("ABM"). Plaintiff was born in the Ukraine.

Plaintiff alleges that, in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. 2000e *et seq.*, and 42 U.S.C. §1981, defendant disciplined

him because of his nationality. Plaintiff also alleges that, in violation of Title VII,

the discipline was imposed in retaliation for prior complaints of discrimination.

The prior complaint was made while working at the same location and under the

same supervisor, but when a contractor other than defendant was plaintiff's

employer. Defendant moves for summary judgment dismissing plaintiff's entire cause of action. Although plaintiff has not filed a formal motion, he cites Fed. R. Civ. P. 56(f)(1) and contends he is entitled to summary judgment. Since defendant is entitled to summary judgment, it is unnecessary to separately address plaintiff's request for summary judgment.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274 n.1 (2009); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010); *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements.

*Celotex*, 477 U.S. at 324; ***Freundt v. Allied Tube & Conduit Corp.***, 2007 WL

4219417 *2 (N.D. Ill. Nov. 29, 2007); ***O'Brien v. Encotech Constr.***, 2004 WL

609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence

of purportedly disputed facts if those facts are not plausible in light of the entire

record. *See **Lorillard Tobacco Co. v. A & E Oil, Inc.***, 503 F.3d 588, 594-95

(7th Cir. 2007); ***Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of***

***Chicago***, 357 F.3d 677, 679 (7th Cir. 2004); ***Lampley v. Mitcheff***, 2010 WL

4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the
> initial burden of production to identify "those portions of the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, which
> it believes demonstrate the absence of a genuine issue of
> material fact." ***Logan v. Commercial Union Ins. Co.***, 96 F.3d
> 971, 978 (7th Cir. 1996) (citing ***Celotex Corp. v. Catrett***,
> 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and
> internal quotation omitted)). The moving party may discharge
> this burden by "'showing'--that is, pointing out to the district
> court--that there is an absence of evidence to support the
> nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct.
> 2548. Once the moving party satisfies this burden, the
> nonmovant must "set forth specific facts showing that there is
> a genuine issue for trial." Fed. R. Civ. P. 56(e). "The
> nonmovant must do more, however, than demonstrate some
> factual disagreement between the parties; the issue must be
> 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary
> facts do not preclude summary judgment even when they are
> in dispute." *Id.* (citation omitted). In determining whether the

nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

*Outlaw*, 259 F.3d at 837.

Plaintiff filed this action *pro se*. He was permitted to proceed *in forma pauperis*, though required to pay a partial filing fee. After defendant answered the *pro se* Amended Complaint, counsel was appointed to represent plaintiff. A strong factor in deciding to appoint counsel was the fact that English is plaintiff's second language and he has some problems speaking and writing English. Plaintiff presently states that he has more problem speaking English than reading and writing. Neither appointed counsel further amended the Complaint. Plaintiff

and his first appointed counsel both requested that counsel be granted leave to withdraw because of irreconcilable differences. Plaintiff and his second appointed counsel also could not get along, but counsel remained in the case through the completion of discovery. Counsel also assisted plaintiff in filing plaintiff's response to summary judgment, though plaintiff apparently maintained control over the final editing. Upon both plaintiff's and his counsel's request, the second appointed counsel was granted leave to withdraw and the court declined to appoint further counsel. Plaintiff filed two *pro se* supplemental responses regarding summary judgment. Since plaintiff was still represented by counsel both when defendant's summary judgment motion was filed and when plaintiff filed his primary response, the notice requirement for *pro se* litigants contained in Local Rule 56.2 and ***Timms v. Frank***, 953 F.2d 281, 284-85 (7th Cir. 1992), does not apply. Even if it did, plaintiff apparently was aware of summary judgment procedures and those procedures are also discussed in defendant's motion to strike, which plaintiff responded to. Even if plaintiff should have received further notice, he was not prejudiced. *See **Timms***, 953 F. 2d at 286; ***McLean v. Fed. Bureau of Prisons***, 2010 WL 3328038 *1 (S.D. Ind. Aug. 23, 2010).

Plaintiff has again moved for the appointment of counsel. Plaintiff states in part: "I need to have the Counsel because my English language, especially verbal communication, is not good enough for court house proceeding that creates big difficulties for all parties of the lawsuit including the Honorable Judge and big possibilities for erroneous resolving the case due to misunderstanding upon court hearing." While that is a factor to consider, plaintiff's previous failures to cooperate with appointed counsel is also a factor. After plaintiff could not get along with one attorney, he was warned that he would have to cooperate with the next attorney because there would not be a third chance. Plaintiff also could not get along with the second attorney. There is nothing to support that both attorneys were at fault for the irreconcilable differences. Moreover, at this point the court has had an opportunity to see the available evidence in this case that was gathered through the full assistance of counsel during discovery. An attorney also tried to aid plaintiff in making his factual presentation, but plaintiff apparently believed he himself knew best how to present his case. There is no indication plaintiff would cooperate with a new attorney. For the reasons discussed below, defendant is entitled to summary

judgment. Appointment of counsel is also denied on the ground that the case is not sufficiently meritorious to justify appointment of further counsel.

Defendant moves to strike plaintiff's Local Rule 56.1 response and statement of additional facts, as well as plaintiff's affidavit. This court has discretion as to how strictly to apply the requirements of Local Rules, including Rule 56.1. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 409 (7th Cir. 2009); *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 527 (7th Cir. 2000); *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 897 (N.D. Ill. 2010). This bench generally does not strictly enforce Rule 56.1 if a party, in some manageable form, asserts facts and provides citations to the record. *See Morrow v. Potter*, 2011 WL 663029 *2 (N.D. Ill. Feb. 10, 2011) (collecting cases). While plaintiff's presentation stretches to the limits of manageable, none of plaintiff's filings will be stricken. Defendant's contentions, though, have been considered in determining whether plaintiff has properly supported his factual contentions. Inadequately supported factual statements of plaintiff are not credited. Prior letters and position statements of plaintiff that were not submitted under oath cannot be used by plaintiff as affirmative evidence of the matters stated

therein.[1] The only statements of plaintiff that are presently being considered as affirmative evidence are his deposition testimony and his affidavit that is provided as Exhibit 1 to his response. Even that evidence is limited to statements of fact based on plaintiff's personal knowledge, not his stated beliefs about events that occurred outside his presence. *See Marr v. Bank of Am., N.A.*, 662 F.3d 963, 968 (7th Cir. 2011) (quoting *Montgomery*, 626 F.3d at 389) ("uncorroborated, self-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts"); *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 n.2 (7th Cir. 2011) ("a party cannot use his own interrogatory answer, which is almost certainly hearsay when offered by that party himself to prove the truth of its contents, to support or oppose summary judgment. Rule 56(c)(4) requires that affidavits and declarations to support or oppose summary judgment must be made on personal knowledge"); *Montgomery*, 626 F.3d at 395-96 (a party's stated beliefs about a co-worker's conduct or qualifications cannot support a genuine factual dispute if not based on personal knowledge); *Oest v. Ill. Dep't of*

---

[1]They could be used to show plaintiff previously raised certain contentions, but that is not presently an issue in the case. They could also possibly be used against plaintiff as admissions.

*Corr.*, 240 F.3d 605, 614 (7th Cir. 2001) (plaintiff's "own uncorroborated, conclusory statements that similarly situated co-workers were treated differently" was insufficient to support that fact). Also, to the extent plaintiff presently asserts facts in his affidavit that are contradicted by prior deposition testimony, the affidavit will not be credited absent a sufficient explanation. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 750-51 (7th Cir. 2010); *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 406-07 (7th Cir. 2008). Arguments of plaintiff have been considered even if contained in a fact statement or supplement and not his actual brief.

In its opening brief, defendant only addresses plaintiff's claim of discrimination, though some of its arguments, include regarding pretext, apply equally to plaintiff's claim of retaliation. In his answer brief, plaintiff points out that his retaliation claims are not addressed by defendant and contends, therefore, that those claims must survive summary judgment. In its reply, defendant contends plaintiff cannot raise retaliation for the first time in response to summary judgment and, even if such claims are before the court, they fail on summary judgment.

Contrary to defendant's contention, plaintiff's Amended Complaint includes a retaliation claim under Title VII.  In the section heading before ¶ 34, ¶ 39, and ¶ 45, plaintiff references 42 U.S.C. § 2000e-3(a), which is the retaliation provision of Title VII.  Paragraph 39 also expressly uses the word retaliation. Additionally, claiming retaliation is consistent with the allegations in paragraphs 36 and 37 regarding prior claims of discrimination.  Further, referring to discrimination or unlawful employment practices in violation of § 2000e-3(a) is consistent with the statute itself which does not use the word retaliation, instead using the language: "It shall be an *unlawful employment practice* for an employer to *discriminate* against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  (Emphasis added.) Including a retaliation claim in the Amended Complaint is consistent with the fact that plaintiff's original Complaint also claimed retaliation[2] and he checked the retaliation box on his EEOC charge.

---

[2]Plaintiff's original complaint used a discrimination complaint form that, unlike the court's present form, did not have a box for retaliation.  An attachment to the form that further describes his claims expressly refers to retaliation in violation of § 2000e-3(a), twice.

Although defendant did not address retaliation in its opening brief, it did request that the case be dismissed in its entirety. It also addressed issues of pretext which are equally applicable to the retaliation claim. In its reply, defendant addresses the retaliation claim. The merits of the retaliation claim will be considered. Plaintiff was not prejudiced by the failure to raise the issue in the opening brief since, in his response, plaintiff contends he is entitled to summary judgment on retaliation, which necessitates presenting evidence in support of that claim. Also, after defendant filed its reply expressly addressing retaliation, plaintiff was permitted to file a second supplement (in the form of a letter entitled "About Impertinent Defendant's Behavior and Alert for Avoiding Court Error"), which is essentially a surreply.

Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor, the facts taken as true for purposes of ruling on defendant's summary judgment motion are as follows. Since August 1999, plaintiff has worked as a janitor at the 300 Riverside Plaza building in Chicago, Illinois (the "Building"). The Building contracts with outside companies to provide janitorial services for the Building. The janitorial employees are members of a union. When the outside contractor changes, the new contractor generally

retains the same employees, including front line supervisors, that were employed by the prior contractor. Defendant was the outside contractor when plaintiff first began. Lakeside Maintenance followed by Millard Maintenance were the contractors from 2001 until November 2007, when defendant again became the contractor. In Fall 2010, defendant was replaced. None of the other outside contractors are entities related to defendant. Plaintiff still works at the Building, but as an employee of the current contractor.

Since at least 2001, Violet Stosic has been plaintiff's immediate supervisor. Stosic has also been an employee of each outside contractor. While defendant was the outside contractor for the Building, Operation Manager Angie Karwowski was Stosic's supervisor. Karwowski worked exclusively for defendant, supervising contracts it had with a number of buildings. Karwowski remained with defendant both before and after defendant's 2007-10 contract with the Building. Defendant's Human Resources Director from 2007-10, who is one of defendant's permanent employees, was Irina Feldman. Adam Kopec has been Stosic's assistant supervisor since 2001, working as an employee under the various outside contractors, including defendant. While plaintiff was an employee of defendant, Stosic, Karwowski, Feldman, and Kopec were all involved in decisions

regarding plaintiff's discipline.  During the 2007-10 period, plaintiff was the only ABM employee at the Building who was of Ukranian descent.[3]

Stosic supervised the 26 ABM employees on the Buildings night cleaning crew.  Three worked on special projects that varied from night to night, and the other 23 generally were assigned particular areas of a floor.  The latter employees might share duties in other areas when there were absences.  Plaintiff was usually assigned Seventh Floor North and Eleventh Floor South.  Stosic's duties included ensuring that the building was clean and monitoring employee work.  She conducted inspections of employee work and would follow up when deficiencies were found.

Defendant had a type of progressive discipline.  Under the applicable collective bargaining agreement, each time there is a new contractor, discipline under the prior contractor does not affect discipline under the new contractor.  Under a new contractor, any progressive discipline starts over from the first step.  Plaintiff complains of being reprimanded four times.  Only the third of the four incidents resulted in any discipline other than having a written reprimand in his file.  The third incident resulted in a one-day suspension and corresponding loss of

---

[3]Since plaintiff is the only Ukranian employee, any reference to other ABM employees necessarily refers to a non-Ukranian.

pay. A basis for imposing this penalty for the third incident was the existence of the prior two reprimands. Defendant contends only the third incident can be considered regarding discrimination because it is the only one for which an adverse employment action was imposed.

The first incident occurred in April 2008. Plaintiff and five others were instructed to clean on the second floor, to cover work of an absent employee. They were also provided a sheet telling them to omit certain cleaning activities for their assigned areas. Def. Exh. A(2). They were instructed to omit the duties of "[u]sing a treated dust cloth, dust partitions, desk, chairs, cabinets, window sills, fire extinguisher, tables, book shelves and other low level horizontal surfaces." Plaintiff told Stosic he would not clean the second floor until defendant complied with collective bargaining rules for these assignments. Stosic's response was to take the duties away from plaintiff and give him a written reprimand for refusing work. Plaintiff's Union declined to pursue a grievance on his behalf.

Presently, plaintiff contends he should not have been reprimanded because he did not violate any rule. He contends the instruction to perform extra work did not comply with a provision of his collective bargaining agreement, *see* Pl. Exh. 11, for the following reasons. Plaintiff contends the provision limits

covering for others to situations in which the absent employee calls in sick, but the April assignment was based on an employee taking a planned day off for her birthday. Plaintiff, however, presents no admissible evidence that the employee's absence was a planned absence. Regardless, the rule provided by plaintiff only states that a substitute employee (instead of coverage by other regular employees) must be provided when the absent employee is absent for more than five consecutive days. There is no provision that the absence must be unplanned or based on an illness. Plaintiff contends the work order failed to tell him what portion of his regular work should not be done, but, as set forth above, it identified the portion of his job duties to omit performing. Plaintiff also contends the Union contract requires certain attributes ("name, author, content, destination, etc.") that were not included, but cites no contract provision requiring these specific attributes nor any attribute not in the instruction he received. The undisputed facts only support that plaintiff committed a violation by refusing the assigned work.

The second incident occurred in October 2008. Stosic purported to find deficiencies when inspecting plaintiff's work and reported them to plaintiff. Approximately two weeks later, Stosic, Kopec, and Karwowski reinspected and purportedly found the deficiencies had not been addressed. Plaintiff was issued a

written reprimand. Plaintiff was not docked any pay or suspended. He did become ill when told he was being reprimanded and ended up missing a day and one-half of work without pay. Plaintiff's Union declined pursuing a grievance. Plaintiff testified that his floor was not dusty or dirty on the date of reinspection. Pl. Dep. 58-64.[4] On defendant's summary judgment motion, it must be taken as true that plaintiff's work was not deficient.[5] Instead, the supervisory employees fabricated the grounds for his reprimand.[6] Plaintiff also contends that the Union contract prohibits disciplining him for this purported conduct without first contacting the Union and following certain procedures. The cited provision of the contract (Pl. Exh. 16 at 6-7 [Art. III, § 2]) does not require those procedures for minor violations when the discipline imposed is a reprimand.

The third incident occurred in March 2009. On March 17, Stosic instructed plaintiff to improve the dusting of his assigned area. When she and

---

[4]Plaintiff's deposition testimony was given through a translator.

[5]For purposes of plaintiff's summary judgment motion, the supervisor's testimony would be taken as true and it would be assumed plaintiff's performance was deficient.

[6]Plaintiff also contends that there was no initial inspection, only the purported follow-up inspection. He provides no admissible evidence to support that contention.

Kopec reinspected on March 24, they still found dust on tables. Plaintiff was given an employee corrective action notice and was suspended one day without pay. Karwowski approved the discipline. Plaintiff points to no admissible evidence disputing what occurred. His affidavit does not address the underlying facts. At his deposition, he was not asked whether the tables on his floors were dusty. *See* Pl. Dep. 69-73.[7] The Union declined plaintiff's request to pursue a grievance. Plaintiff again contends that defendant failed to follow the discipline procedures required under the Union contract. It is undisputed, though, that the Union was informed and declined to proceed further. There is no evidence that defendant followed different procedures for other employees being subjected to similar discipline.

Plaintiff also contends that it was improper to reprimand or otherwise discipline him for inadequate cleaning because his October 2008 and March 2009 performance scores were on the same level as the janitors that cleaned the other halves of the Seventh and Eleventh floors. But even if plaintiff's scores were satisfactory on another day in October 2008 or March 2009, that is distinct from being insubordinate or failing to clean adequately on the specific days cited in the

---

[7]Plaintiff conclusorily asserted, without elaboration, that the corrective action notice was "fabrication. It is not true." Pl. Dep. 69.

reprimands. Moreover, plaintiff's Exhibit 15 does not even fully support plaintiff's contentions regarding comparing scores for his side of each assigned floor with the other side.

The fourth incident occurred in June 2009. On June 30, 2009, with a Union representative present, plaintiff was given a letter titled "Final Warning," which stated the following:

> On June 22nd you were notified by your immediate Supervisor about a work order request to vacuum one of your floors. You demanded to see it and when your request was denied went to the building office asking to name who submitted that work order.
>
> This is a violation of Employee Instructions, Information and Work Rules, Work Rule #16, which specifically states that "it is the Company's responsibility to address work-related issues and work-related complaints. Failure to observe this rule may be cause for termination." Enclosed with this letter is a copy of these rules signed by you on October 15, 2007.
>
> Following your wife and daughter's attempt to see a building manager last year, your [sic] were advised to contact ABM regarding any work-related issues. You were specifically instructed not to approach building management with any questions or concerns.
>
> This is your <u>Final Warning</u>. Any future attempts to communicate with the Building Management will result in you [sic] immediate termination from ABM Janitorial Services.

Pl. Exh. 7.[8]  No suspension, loss of pay, or other discipline was imposed.  Plaintiff only received the warning.

Defendant provides no evidence supporting that plaintiff had been previously warned.  Defendant cites plaintiff's deposition testimony, but plaintiff testified that he recalled his wife and daughter complaining directly to Building management, but did not recall receiving an instruction, at that time, that he should not contact Building management.  Pl. Dep. 101-02.  Plaintiff did testify: "I understand that I shouldn't go to property manager regarding my work." *Id.* at 102.  Plaintiff does not otherwise dispute the facts contained in the warning.  He adds that he contacted the Building manager during non-work time.  He testified that he was trying to obtain proof that Stosic had fabricated the existence of a communication from Building management or a tenant, that he told the Building

---

[8]The copy of the Rules that was attached to the Final Warning actually provides: "16. Customers and building tenants are official to our business.  They must be treated with care and respect.  If you should meet someone while on our job, be polite and tend to your work.  If you are asked to do something within the scope of building cleaning and maintenance, be pleasant and do it.  It is the Company's responsibility to address work-related issues and work-related complaints.  Please bring work-related issues or complaints to your supervisor or other appropriate company representatives.  Any unusual communications with customers or building tenants should be reported to your supervisor as soon as possible."  At the bottom of the one-page Rules, it is stated in all capitals: "FAILURE TO OBSERVE ANY OF THE ABOVE RULES MAY BE CAUSE FOR TERMINATION."  Pl. Exh. 8.

manager that was his purpose, and the manager would not tell him whether or not there had been any communication because that would be confidential information.[9]  Plaintiff contends he committed no Rule violation because the contact occurred while he was off duty.  Rule 16, however, does not limit its provisions to contact during work time.  Undisputed evidence supports that plaintiff violated Rule 16.  Plaintiff presents no evidence that Rule 16 was applied differently to other similarly situated employees.

Plaintiff relies on the indirect method of showing discrimination.  The burden is on plaintiff to present sufficient evidence to support a genuine factual dispute that he suffered an adverse employment action because of his nationality.  Under the indirect method, burden-shifting approach generally applied in analyzing summary judgment motions as to discrimination claims, a *prima facie* case of employment discrimination creates a rebuttable presumption that the employer's actions, if unexplained, were the result of impermissible factors and

---

[9]Plaintiff presently contends there was no initial work order or complaint from a tenant or Building management, but provides no evidence to support that contention.  He also quibbles over whether Stosic said there was a "complaint," while the warning admits it was a "work order" at most.  The existence of an underlying complaint or work order is immaterial since plaintiff was not reprimanded for failing to do proper work; he was reprimanded for thereafter contacting Building management.

shifts the burden of production to the employer to articulate some legitimate, nondiscriminatory reason for its actions. If the employer satisfies that burden, the plaintiff must then show that the articulated reason is pretextual. *Davis v. Con–Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 784 (7th Cir. 2004). Plaintiff may establish a *prima facie* case of employment discrimination by showing he (1) is a member of a protected class (Ukranian), (2) met defendant's legitimate performance expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than a similarly situated employee outside the protected class (non-Ukranian). *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008). In claims involving discriminatory discipline, the second and fourth elements often merge. *Id.* "Accordingly, the analysis of the employer's expectations falls by the wayside, and a 'plaintiff must establish that [s]he received dissimilar--and more harsh--punishment than that received by a similarly situated employee who was outside the protected class.'" *Id.* (quoting *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004)). In order to be similarly situated, the other employee must be comparable in all material respects, which generally includes that plaintiff and the comparator had the same type of job, were subject to the same standards, had comparable experience and qualifications,

engaged in similar misconduct, and had the same supervisors. ***Bodenstab v. Cty. of Cook***, 569 F.3d 651, 657 n.2 (7th Cir. 2009). The "'similarly-situated'. . . test involves a flexible, common-sense approach with requirements that vary from case to case. Regardless of the context, however, the purpose of the test remains the same: to discern whether there are sufficient common factors between the plaintiff and another employee to allow for a meaningful comparison in order to divine whether discrimination was involved in an employment decision." ***McGowan v. Deere & Co.***, 581 F.3d 575, 579-80 (7th Cir. 2009). *See also **Coleman v. Donahoe***, ___ F.3d ___, ___, 2012 WL 32062 *1 (7th Cir. Jan. 6, 2012). Defendant contends plaintiff fails to satisfy the third element for all but the third incident. Defendant also contends that plaintiff cannot satisfy the second/fourth element for any of the incidents.

An adverse employment action is not limited to the loss or reduction of pay or monetary benefits, but it must materially alter the terms and conditions of employment. ***Whittaker v. N. Ill. Univ.***, 424 F.3d 640, 647-48 (7th Cir. 2005). It is well established in the Seventh Circuit that a reprimand alone, even one that goes into the employee's personnel file, does not constitute an adverse employment action unless it affects pay or benefits, or otherwise affects a tangible

employment benefit such as by precluding an opportunity for a promotion or raise. *See id.* at 648; *Benuzzi v. Bd. of Educ. of Chicago*, 647 F.3d 652, 663 (7th Cir. 2011); *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009); *McCowan v. Ombudsman Educ. Serv.*, 2010 WL 2732860 *6 (N.D. Ind. July 7, 2010). Since the first, second, and fourth incidents only resulted in reprimands,[10] the incidents themselves cannot constitute violations of Title VII or § 1981. This is true even though the level of discipline imposed for the third incident was based on there being two prior reprimands. *Oest*, 240 F.3d at 613. The prior incidents, though, could possibly be considered as relevant evidence of whether the third incident was motivated by discrimination. *Id.* at 613-14; *Williams v. Ill. Dep't of Revenue*, 2011 WL 2909289 *9 (C.D. Ill. July 20, 2011); *Threatt v. Jackson*,

---

[10]For present purposes, it is taken as true that distress from the second incident resulted in plaintiff becoming ill and taking a day and one-half off work without pay. The employee's subjective response to being reprimanded generally does not support a loss of a tangible job benefit. *Gul-E-Rana Mirza v. The Neiman Marcus Grp., Inc.*, 649 F. Supp. 2d 837, 857-58 (N.D. Ill. 2009); *Lilly v. Potter*, 2010 WL 4791490 *6 n.3 (N.D. Ill. Nov. 18, 2010); *Sraieb v. Am. Airlines, Inc.*, 735 F. Supp. 2d 837, 842-43 (N.D. Ill. 2010); *Mangano v. Sheahan*, 2002 WL 1821738 *7 (N.D. Ill. 2002). While stress-induced illness resulting in missed work and caused by a hostile work environment can satisfy the adverse employment action element, *see Cook v. Ill. Dep't of Corr.*, 736 F. Supp. 2d 1190, 1197-98 (S.D. Ill. 2010), plaintiff does not establish the existence of a hostile work environment, nor make an argument based on that theory.

2008 WL 1774986 *13 (N.D. Ill. April 16, 2008), *aff'd by unpublished order sub*

*nom.*, **Threatt v. Donovan**, 380 F. App'x 544 (7th Cir. 2010), *cert. denied*, 131

S. Ct. 3084 (2011).

As to the third incident, undisputed evidence supports that plaintiff

failed to adequately dust his assigned area, he was asked to correct that deficiency,

he failed to do so, and, in part based on the two prior reprimands, he was

disciplined with a one-day suspension. Plaintiff does not point to another

similarly situated employee who performed deficiently, was warned, and did not

improve, but was not punished for doing so or was punished less severely.

Plaintiff does not satisfy the *prima facie* case regarding the third incident. The

fact that he received one of his prior reprimands based on a false claim of deficient

cleaning does not establish that the third incident and related punishment was

motivated by discrimination.

Since plaintiff does not establish a *prima facie* case for any of the

claimed incidents of discrimination, his claims of discrimination will be dismissed.

A different *prima facie* case and adverse action standard applies to the

retaliation claim. "A plaintiff may establish unlawful retaliation using either the

direct or indirect method of proof. Under the direct method, [plaintiff] must

demonstrate that (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection exists between the two. Under the indirect method, the first two elements remain the same, but instead of proving a direct causal link, the plaintiff must show that he was performing his job satisfactorily and that he was treated less favorably than a similarly situated employee who did not complain of discrimination." *Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009). Since plaintiff does not point to any comparables, he must rely on the direct method.

For purposes of a claim of retaliation, the adverse action requirement is satisfied by actions that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 868 (2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "In determining the significance of any given act of retaliation, the test is objective but 'context matters' and we look at the 'constellation of surrounding circumstances, expectations, and relationships.'" *Chapin v. Fort–Rohr Motors, Inc.*, 621 F.3d 673, 678 (7th Cir. 2010) (quoting *Burlington N.*, 548 U.S. at 69). A "materially adverse action" necessary for a retaliation claim is a broader term than an "adverse employment action" required

for a discrimination claim. ***Benuzzi***, 647 F.3d at 665. Still, as with adverse employment actions, written warnings alone generally will not constitute a materially adverse action. ***Id.*** In certain circumstances, though, reprimands can be sufficient; for example, when the reprimand is particularly harsh or is in a context that is close to threatening a loss of a tangible job benefit. *See id.*; ***Silverman v. Bd. of Educ. of Chicago***, 637 F.3d 729, 741 (7th Cir. 2011).

Here, the first two incidents involve simple reprimands that a reasonable jury could not find to be materially adverse actions. As with the discrimination claim, the third incident satisfies the adverse action requirement for a retaliation claim. The fourth incident was labeled a "final warning" and threatened termination for a further infraction. The fourth incident will be assumed to satisfy the materially adverse action requirement. *See **Benuzzi**, supra. But compare **Banks v. CBOCS West, Inc.***, 2005 WL 1126913 *13 (N.D. Ill. 2005) (in the circumstances of the case, final warning was not a materially adverse action).

Even taking as true that plaintiff has satisfied the first two elements regarding the third and fourth incidents, he still must show a causal relationship between each adverse action and his engaging in statutorily protected activity. "Direct evidence of retaliation typically requires an actor's admission of

discriminatory animus, *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114

(7th Cir. 2009), but such evidence is predictably rare. A plaintiff may also prevail

'by constructing a convincing mosaic of circumstantial evidence that allows a jury

to infer intentional discrimination by the decisionmaker.'" *Stephens*, 569 F.3d

at 787 (quoting *Phelan v. Cook Cnty.*, 463 F.3d 773, 779-80 (7th Cir.2006)

(quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004))). The

Seventh Circuit has recognized three categories of circumstantial evidence that

can establish the convincing mosaic. "One includes 'suspicious timing, ambiguous

statements oral or written, . . . and other bits and pieces from which an inference of

[retaliatory] intent might be drawn.' Another is 'evidence, but not necessarily

rigorous statistical evidence, that similarly situated employees were treated

differently.' Another type is 'evidence that the employer offered a pretextual

reason for an adverse employment action.' 'Each type of evidence is sufficient by

itself (depending of course on its strength in relation to whatever other evidence is

in the case) to support a judgment for the plaintiff; or they can be used together.'"

*Coleman*, ___ F.3d at ___, 2012 WL 32062 at *3 (citations omitted).

Here, there is no suspicious timing. When a prior contractor was

cleaning the Building, plaintiff brought a discrimination complaint based on

Stosic's alleged conduct. This lawsuit was resolved in January 2007, more than two years before the third and fourth incidents. Also, there is no evidence that any decisionmaker other than Stosic was aware of this lawsuit. It is also uncontested that plaintiff filed the EEOC complaint underlying the present lawsuit in August 2008, which is seven and ten months prior to the third and fourth incidents. There is no evidence as to when, or even if, the various decisionmakers were aware of that complaint. As to the third and fourth incidents, it is undisputed that plaintiff committed the underlying misconduct. The only possible evidence as to pretext concerns the second incident. There is no evidence of similarly situated employees being treated differently or that defendant has a pattern of not imposing discipline on non-Ukrainians who commit violations. Plaintiff has not presented sufficient evidence of a convincing mosaic. The retaliation claim will also be dismissed.

Defendant's motion for summary judgment is being granted and a judgment will be entered dismissing plaintiff's cause of action with prejudice. If plaintiff wishes to appeal today's ruling, he must file a Notice of Appeal to the United States Court of Appeals for the Seventh Circuit with the Clerk of the Court, United States District Court for the Northern District of Illinois, 219 South

Dearborn Street, 20th Floor, Chicago, Illinois 60604, within thirty (30) days of the entry of the judgment in this case. *See* Fed. R. App. P. 4(a)(1)(A). Plaintiff was granted leave to proceed *in forma pauperis* but was still required to pay a partial filing fee. If he desires to proceed *in forma pauperis* on appeal, any notice of appeal should be accompanied by motion to proceed *in forma pauperis* and an up-to-date financial affidavit.

IT IS THEREFORE ORDERED that plaintiff's renewed motion for appointment of counsel [90] is denied. Defendant's motion to strike [85] is denied. Plaintiff's request for summary judgment is denied. Defendant's motion for summary judgment [57] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: JANUARY 18 , 2012